THE STATE OF MARYLAND to the use of the
County Commissioners of Prince George's
County, Maryland,

*vs.*

THE AMERICAN BONDING COMPANY OF BALTI-
MORE, MARYLAND, and ARTHUR H. SIMPSON.

*Statutes: penal—; revocation; effect of repeal. Road laws:
Prince George's County road fund; distribution. Acts
of 1910 and 1914: no vested rights.*

Where from the general framework of a statute and the man-
ner in which the subject-matter is dealt with it is evident that
the Legislature intended such a general statute to be a com-
plete system of legislation in regard to the subject-matter, the
statute thus passed must be considered as a substitute for all
prior laws on that subject, and provisions of such prior laws
not embraced in the latter statute are repealed.      pp. 272-273

By section 286 of Chapter 90 of the Acts of 1910, creating a
board of road directors for Prince George's County, after pro-
viding for certain payments from the total of a sum received by
the county for roads or bridges, it was directed that the balance
should be distributed equally among the road districts into
which the county was divided by the Act; such sums to be
divided among the election districts of each road district ac-
cording to the proportion of the mileage of each such election
district to the road mileage of the whole district; it was made
the duty of the county road engineer to see that no road district
should exceed its allowance; other sections of the Act provided
for a county road engineer and for his giving bond according to
a form prescribed. Chapter 801 of the Acts of 1914 established
a complete system of road laws for Prince George's County dif-
ferent from that which had existed and operated as a repeal of
the provisions of the Act of 1910 so far as there was a conflict.

p. 273

Section 286 of Chapter 90 of the Acts of 1910 gave no vested
rights as to the distribution of the road fund.      p. 273

STATE vs. AMER. BOND'G CO. OF BALTO. 269

Md.]                                    Syllabus.

Such rights were not given to any private individual, nor under it did any right accrue to the County Commissioners.
p. 273

After the passage of the Act of 1914, no action will lie on the bond of such road engineer for his failure to see to it that no road district should exceed its allotment under the provisions of the Act of 1910.                                    p. 274

No penalty incurred during the existence of a statute can be enforced after its repeal or expiration, unless there is a saving clause or special provision to that effect.                  p. 272

*Decided April 5th, 1916.*

Five appeals from the Circuit Court for Prince George's County. (BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Ogle Marbury* (with whom was *Gerald F. Kapp* on the brief), for the appellant.

*Howard Duckett and M. Hampton Magruder* (with whom were *Marion Duckett* and *S. Marvin Peach* on the brief), for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The appeal presented in this record is in reality an appeal in five separate and distinct cases. In each case the plaintiff is the State of Maryland to the use of County Commissioners of Prince George's County, and the action is upon a bond which had been given by the defendants for the performance of certain duties. The suit against Dent and the United States Fidelity and Guaranty Company was upon a bond of $5,000 for the faithful performance by Dent of the duties of Road Engineer of Prince George's County, given in accordance with the provisions of an Act of the General

Assembly of 1910, Chapter 90. The suit against Thomas T. Shea and the same surety, was on a bond for $2,000 for the proper performance of the duties of Road Engineer; that against William E. Mudd and the American Surety Company of New York was on a like bond for Mudd as road director; that against Simpson and the American Bonding Company was a similar suit growing out of Simpson's position as road director; and that against Arthur B. Duley, W. H. Gibbons and W. C. Duley was a like suit, Arthur B. Duley having been also one of the road directors of that county.

The declaration does not set forth a specific breach of the bond, but the alleged breach is disclosed by the bill of particulars, and consists in this: That by the Act of 1910 the road directors and engineer were to divide a certain sum, to be raised by an issue of bonds of the county, among the four road districts of the county in proportion to the respective road mileage in each of the four road districts into which the county was divided, and this it is alleged has not been done.

The total amount of diversions claimed in the suit against Dent amounts to $7,047.13; as against Shea, $2,753.01; as against Mudd, $747.60; as against Simpson, $2,214.45, and as against Duley, $1,431.90.

There is no claim or pretense that either the engineer or road directors appropriated any of this money to their personal use, and the diversion alleged consists solely in this, that the sums expended in the road districts did not bear the proportion to the road mileage of the district which was called for by the Act of 1910. To the declaration in each case a demurrer was filed, which demurrer was sustained, and a judgment of *non pros* entered, and it is from that judgment that the appeals have been taken.

Quite a large number of grounds have been presented in support of the demurrer, but it is not necessary for the determination of this case to consider more than one or two of them. A short recital of certain of the legislative provisions is, however, necessary.

In 1910 the Legislature by Chapter 90 created a Board of Road Directors for Prince George's County, and constituted that board a body corporate with powers, duties and obligations co-extensive with those theretofore resting on the County Commissioners or the Board of Highway Commissioners of the county. The county was divided by section 281 into four road districts, and the Board of Road Directors was given supervision over all public highways and bridges, except State roads and State aided roads. Succeeding sections made provision for the bonding of the road directors and road engineer, and prescribed the powers of each. By section 286 it was provided: That the total sum received for the use of roads and bridges from any source, after payment into the redemption fund, should be divided into four parts, one of which was to be used for the purpose of paying all overhead charges, including salaries, and then,

> "the remaining three parts shall be equally divided among the four road districts herein created for use upon the roads and bridges of the respective districts, and the sum so allotted to each road district shall be divided among the election districts of the respective road districts according to their road mileage; and the engineer shall keep a separate itemized account of all expenditures, seeing to it that no road district exceeds its allotment."

The subsequent sections of the Act give authority to raise by loan, and the issuance of the bonds of the county, a sum not exceeding $16,000 to be used upon the roads. The defendants in the several suits already referred to were the four road directors and the road engineer, and the theory upon which these suits were instituted grows out of the language quoted from section 286, for the several divisions already mentioned.

By Chapter 801 of the Acts of 1914, all of the Act of 1910 was repealed, with the exception of the section which provided for the issuance of the bonds of the county and the raising of the money, and by section 278 of this latter Act,

it was provided that all matters affecting the roads and bridges in said county should be under the control of the Board of County Commissioners. Provision was then made for a division of the county into six, instead of four, road districts, and for a board of six, instead of four, road directors, and the position created by the Act of 1910 of road engineer was abolished.

The Act further provided for the division among the several road districts of the road working machinery and tools, and by section 284 required the Board of Road Directors to pay over to the Board of County Commissioners all sums on deposit to the credit of the Board of Road Directors, or in their hands or control, from whatever source received. This Act contained no saving clause as to any rights which might have existed or accrued under the Act of 1910, and the first matter to be considered is, what was the effect of this legislation upon the Act of 1910?

It is not the case of an implied repeal, the repeal is express, and the effect of such a repeal where there is no saving clause is one which has been frequently considered by the Courts of this and other States. In the case of the *State* v. *B. & O. R. R.*, 12 G. & J. 399, the law was laid down that no penalty incurred during the continuance of a law can be enforced after its repeal or expiration, without a saving clause or special provision to that effect, and this rule was re-affirmed on appeal in *State* v. *B. & O. R. R. Co.*, 3 Howard, 535. The same doctrine was again applied in *Keller* v. *State*, 12 Md. 325; *Smith* v. *State*, 45 Md. 49; *Montel* v. *Cons. Coal Co.*, 39 Md. 164; and in *Turner* v. *State*, 55 Md. 240, it was held that when the Legislature makes a revision of a particular statute and passes a general statute upon the subject, and it is evident from the general framework of the statute, and the manner in which the subject matter is dealt with, that the Legislature intended such general statute to be a complete system of legislation in regard to the matter, the statute thus passed must be considered as a substitute for all prior laws on the subject, and

the provisions of such prior laws as are not embraced by the latter statute are thereby repealed. In 26 *Am. & Eng. Ency.* 747, it is said, that the repeal of a statute in the absence of a saving clause necessarily divests and destroys all inchoate interests which have arisen under it, while it leaves unimpaired those which have become vested. This is a succinct statement of the general rule which will be found applied in all of the cases. See also, note as to the effect of repealing statute in *Prichard* v. *Savannah Street R. R. Co.,* 14 L. R. A. 722.

No one can examine the Act of 1914 and fail to realize that that Act was designed to establish, and did establish, a complete system of legislation in regard to the matter of roads in Prince George's County, different from that which had theretofore existed, and thus to fall directly under the language of the decision of this Court in *Turner* v. *State, supra.*

Nor can any right which might have accrued under the Act of 1910 be regarded as coming within the class of vested rights. At best it was but inchoate. This will be realized the moment we attempt to ascertain who was the real party in interest to be affected thereby. Manifestly it was not an individual citizen of Prince George's County, for it was entirely outside of the contemplation alike of the Act of 1910 and of the terms of the bond that it should confer any private right, nor could any right have accrued to the County Commissioners in their corporate capacity, since it is conceded that all of the money expended was expended in Prince George's County, and for the benefit of the county, and the county as a county was in nowise injured.

This conclusion is further strengthened by another consideration. Counsel for the County Commissioners in these suits have argued that the duty imposed on the Board of Road Directors under the Act of 1910 was mandatory, not directory. They concede that if directory the suit can not be maintained. The language employed in the Act of 1910 was of a character sometimes regarded as mandatory, and

sometimes as directory merely. It was not very dissimilar from the language of the Act considered by this Court in *Weller* v. *Mueller*, 120 Md. 633, and which was there treated as directory, and the reasons which impelled this Court in that case to hold the language directory, are equally applicable in the present case, though at this time the Court does not find it necessary to rule specifically as to the directory or mandatory character of the Act of 1910. The rules which control a Court upon that question are well and clearly stated in *Upshur* v. *Baltimore*, 94 Md. 743, and *State* v. *St. Louis*, 158 Mo. 505. In the latter case it was said that, "if from the whole context we gather that the statute was designed to impose an act on the officer as a duty to be performed, then the authority to do it is an obligation to do it. It has been said that when the public welfare demands it or private rights are affected, then the power to act is a duty to act, but the private interests for the protection of which the power would be construed to be a duty must be such as exist independent of the grant of the power."

Enough has been said to indicate that the mandatory character of the Act of 1910 is at least open to serious question, and such being the case the effect of the repealing Act of 1914, without any reservation or saving clause, must be held to have revoked and annulled the right, if any existed, to maintain a suit like those now in question.

It is not deemed necessary to pass upon the other grounds set out in support of the demurrer, for the reason that whether well taken or not the cases would be controlled by the considerations already pointed out, and the judgments appealed from will, therefore, be affirmed.

> *Judgments affirmed, the costs to be paid by the County Commissioners of Prince George's County.*