# RICHARD V. JOHNSON *v.* STATE OF MARYLAND

[No. 22, September Term, 1982.]

*Decided October 21, 1982.*

The cause was argued before MURPHY, C. J., SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY AND COUCH, JJ.

*Edward Smith, Jr.,* for appellant.

*Diana G. Motz, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Richard V. Johnson, a member of the Maryland Bar, was found guilty by a jury in the Criminal Court of Baltimore of (1) wilful failure to file Maryland income tax returns for 1977 and 1978 in violation of Maryland Code (1957, 1980 Repl. Vol.), Article 81, § 320 [1] and (2) failing expeditiously to deposit in a separate escrow account funds belonging to a client in violation of Code (1957, 1981 Repl. Vol.), Article 10, § 44.[2] On appeal, Johnson contends that the trial judge erred in instructing the jury in two particulars and, as to the income tax offenses, in denying his motion for judgment of acquittal made at the conclusion of the State's case-in-chief.[3]

At trial, the parties stipulated in writing that Johnson "earned sufficient income in the years 1977 and 1978 to be required to file a Maryland State Income Tax Return for the calendar years, 1977 and 1978." A state revenue examiner testified that Johnson did not file a tax return for 1977 and 1978. He said that a taxpayer's gross income would determine whether a state return must be filed and that Johnson earned income in 1977 and 1978 in amounts requiring that he file a state return. Johnson's accountant testified that he filed Johnson's tax returns for 1976; that he was employed to file Johnson's tax returns for 1977 and 1978; that he completed Johnson's 1977 federal return but did not know whether Johnson actually filed it; that he customarily completes both the federal and the state returns for clients at the same time; that he did not prepare Johnson's state return for

---

**1.** Article 81, § 320 provides:

"The wilful failure on the part of any person or taxpayer to file a [state income tax] return ... as required by the provisions of this subtitle ... shall be a misdemeanor, subject to a fine of not exceeding five hundred dollars ($500) or imprisonment for not exceeding six months, or both ...."

**2.** Section 44 makes it a misdemeanor for any attorney entrusted with "deposit moneys or other trust moneys" to fail to "expeditiously deposit [   ] in an account maintained as a separate account or accounts for funds belonging to others." The section provides further:

"In no event shall [the attorney] commingle any such funds with his own or use any such funds for any purpose other than the purpose for which such funds were entrusted to him."

**3.** We granted certiorari in this case prior to decision by the intermediate appellate court.

1977 or 1978, although on a number of occasions he reminded Johnson that the state return had to be completed and filed; and that Johnson told him that he was assembling his records but was "very busy, and he just hadn't been able to get it all together." Johnson did not testify.

Other evidence adduced at the trial disclosed that Johnson had been retained by Delphine Robinson to represent her in an action for damages resulting from injuries sustained in an automobile accident on December 8, 1978. Mrs. Robinson testified that she was unable to contact Johnson for a number of months thereafter; that when she finally reached him by phone sometime in October 1979 he told her the case had not been settled. An investigator from the State's Attorney's Office testified that Johnson received a settlement draft in Mrs. Robinson's case from the insurer in the amount of $1,200 in late August 1979; that Johnson cashed the draft and ultimately deposited the major part of the proceeds in an account which he maintained with his wife in a separate business.

Johnson contends that the trial judge erroneously instructed the jury that the parties had stipulated that Johnson had earned sufficient *taxable* income in 1977 and 1978 to require that he file state returns for those years. Johnson maintains that the stipulation was only that he earned "sufficient" income for the subject years to require that he file state returns. Even if the trial judge was mistaken as to the actual verbiage of the stipulation, no reversible error is shown by the record.[4] A state tax return must be filed by all persons required to file a federal return; the filing of the state return, like its federal counterpart, is governed by gross income and not by taxable income. *See* Article 81, § 294. Johnson's acknowledgment that he was required to file a state return in 1977 and 1978 was the

---

4. It appears from the record that the stipulation was verbally amended by agreement of the parties at a bench conference to encompass "taxable" income, rather than merely "sufficient" income. Johnson nevertheless took exception to the court's jury instruction in this particular. Because it is not crystal clear that Johnson actually agreed to the amended stipulation, we consider his contention on its merits, as if the stipulation had not been amended.

substance of the stipulation and the jury was not prejudiced by the trial judge's alleged misstatement concerning the wording of the stipulation.

Johnson next argues that because there was no evidence to show that his failure to file the state returns was "wilful," the trial judge was wrong in not granting his motion for judgment of acquittal on the income tax offenses, made at the conclusion of the State's case. The motion was, however, withdrawn when Johnson presented evidence in his own defense. Maryland Rule 756 a. Although Johnson does not argue in his brief that the trial judge erred in denying his later motion for judgment of acquittal, made at the end of the entire case, we shall nevertheless consider the matter. In *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 374 A.2d 354 (1977), we focused on the proof essential to a conviction for violating 26 U.S.C. § 7203 (1970), a federal statute making it a misdemeanor for any person "willfully" to fail to file a federal tax return. We observed that under § 7203, as interpreted by the federal cases, wilfulness was established by proof of a voluntary, intentional violation of a known legal duty.[5] Accordingly, intent to defraud the government need not be proved to establish a violation of the statute. *United States v. McCorkle,* 511 F.2d 482, 485 (7th Cir.) (en banc), *cert. denied,* 423 U.S. 826 (1975); *United States v. Klee,* 494 F.2d 394, 395 (9th Cir.), *cert. denied,* 419 U.S. 835 (1974); *United States v. Lachmann,* 469 F.2d 1043, 1045-46 (1st Cir. 1972), *cert. denied,* 411 U.S. 931 (1973). Although we have never had occasion to define the term "wilful," as used in § 320, we think the meaning accorded to that term by the federal courts under § 7203 comports with the legislative intention in enacting § 320. We therefore conclude that, within the contemplation of § 320, wilfulness may be established through proof that the accused's failure to file constituted a voluntary intentional violation of a

---

5. *See, e.g.,* United States v. Pohlman, 522 F.2d 974, 977 (8th Cir. 1975) (en banc), *cert. denied,* 423 U.S. 1049 (1976); United States v. McCorkle, 511 F.2d 482, 485 (7th Cir.) (en banc), *cert. denied,* 423 U.S. 826 (1975); United States v. Bengimina, 499 F.2d 117, 119 (8th Cir. 1974); United States v. Hawk, 497 F.2d 365, 368 (9th Cir.), *cert. denied,* 419 U.S. 838 (1974).

known legal duty, not the result of accident or mistake or other innocent cause.

We think it clear that there was evidence before the jury from which it could properly infer that Johnson's failure to file was wilful. According to the evidence, Johnson's failure to file state returns for 1977 and 1978 was not discovered until 1980 when, in connection with investigating Johnson for involvement in another offense, the authorities were unable to locate state returns for these years. As heretofore indicated, Johnson's own accountant testified that he had reminded Johnson of his obligation to file state returns for 1977 and 1978 and that Johnson acknowledged his duty to do so. There was evidence showing that Johnson had filed earlier returns and there was no showing that Johnson's failure to file in 1977 and 1978 was due to accident or mistake. *See Leet v. State,* 203 Md. 285, 100 A.2d 789 (1953). We think the trial judge properly denied Johnson's motion for acquittal at the end of the entire case.

With respect to his conviction under Section 44 of Article 10, Johnson argues that the trial judge improperly instructed the jury "that the [insurer's] draft was cashed on September 4, 1982 contrary to the evidence thereby confusing the jury." The short answer to this contention is that the trial judge did not so instruct the jury. Johnson's further arguments respecting the trial judge's instructions pertaining to the § 44 offense are virtually incomprehensible, although we glean from them that he finds fault with the trial judge's response to questions from jurors concerning the meaning of the court's instructions. The record discloses that the trial judge read pertinent testimony to the jury and the inquiring jurors stated that they were satisfied.

*Judgment affirmed, with costs.*